James C. Shah (SBN 260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN 279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Boulevard, Suite 400
Beverly Hills, California 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

Christopher E. Roberts (SBN 363586)
Email: CRoberts@butschroberts.com
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| KIMBERLY HUDSON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ENNKAR, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

# CLASS ACTION COMPLAINT

COMES NOW Plaintiff, Kimberly Hudson ("Plaintiff" or "Hudson"), individually, and on behalf of all others similarly situated, through her undersigned counsel, and for her Class Action Complaint against Defendant, Ennkar, Inc. ("Defendant" or "Ennkar"), states:

## INTRODUCTION AND BACKGROUND ON THE TCPA

1. The receipt of unwanted robocalls has been, for many years, the top consumer complaint made to state and federal agencies around the country. This case is about stopping incessant robocallers, like Defendant, from placing robocalls to the cell phones of Hudson and likely thousands of other persons without first obtaining the proper consent to place such calls.

2. Hudson brings this class action lawsuit against Defendant for improperly placing prerecorded voice calls, i.e., robocalls, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the TCPA's corresponding regulations.

3. Hudson also brings this class action lawsuit against Defendant for improperly placing these calls to persons whose phone numbers were registered on the National Do-Not-Call Registry ("DNC List"), in violation of the TCPA, U.S.C. § 227 *et seq.*, and the TCPA's corresponding regulations.

4. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' privacy rights; namely, the right to be left alone from unwanted telemarketing communications. A leading sponsor of the TCPA described unwanted telemarketing communications as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5. The TCPA affords protections to people who have not provided "prior express written consent" to received prerecorded and/or artificial voice calls on their cell phones. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a). The penalty for

violating the TCPA is $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(b)(3).

6. The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Hudson, frequently face. For example, in 2025 alone, approximately 52.5 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited January 26, 2026).

7. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

8. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission ("FCC") levied more than $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this Court original jurisdiction of all civil actions arising under the laws of the United States.

10. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in California, Defendant is a California corporation, it transacts business in California, directly markets its products and services in California, and sells various products and services in California, and for the reasons otherwise set forth in this Complaint.

11. Defendant has continuous and systematic contacts with the State of California.

12. Hudson was (and is) a resident and citizen of Los Angeles, California at all times relevant to this Complaint.

13. Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claims herein arose in this District and the harms of Defendant's actions were sustained in this venue.

14. The Court has jurisdiction over this dispute for these reasons and for the reasons set forth in this Complaint.

## PARTIES

15. At all times relevant to this Complaint, Hudson was, and is still, the owner of a cell phone, with a phone number of 323-XXX-1729.

16. Hudson's phone number was registered on the DNC List on September 1, 2003, for the purpose of being left alone by telemarketers.

17. The monthly bill associated with Hudson's phone number is issued in her name, and not in the name of a business.

18. Hudson uses her phone primarily for personal purposes, such as communicating with friends and family members.

19. Defendant, Ennkar, Inc. is a California corporation within its principal place of business in California. Defendant has been authorized and in good standing to transact business in California and throughout the United States at all times material to this Complaint.

20. Defendant's business registration with the California Secretary of State states that Defendant's "Type of Business" is "Mortgage Lending."

21. Defendant's website is www.ennkar.com.

22. Defendant offers a variety of mortgage and mortgage-related products.

23. One of the products Defendant offers to consumers, and which it identifies on its website is a "reverse mortgage."

24. Defendant's website states that a "reverse mortgage is a home loan for seniors age 62 or older. Instead of making monthly mortgage payments like a traditional home loan, Reverse Mortgage[s] are paid back in one lump sum when the borrower either moves, sells the home, or passes away."

25. Defendant markets its mortgage and mortgage-related products, in part, through placing telemarketing phone calls.

26. Hudson and the putative class members did not provide "prior express written consent" (as that term is defined in 47 C.F.R. §64.1200(f)(9)) or any form of consent to be contacted on their phones by Defendant or anyone acting on its behalf.

## DEFENDANT'S CALLS TO PLAINTIFF

27. On September 4, 2025, Hudson received a voicemail on her phone from or on behalf of Defendant that utilized an artificial and/or a prerecorded voice.

28. The prerecorded and/or artificial voicemail stated, "Hello. This is Renee Caldwell with the reverse mortgage servicing desk. It's the fourth of September of 2025 and I'm reachable at 920-276-4349. I'm calling to make sure you're aware of the new reverse mortgage options available on your current reverse mortgage. We recently mailed you an information packet and I'd like to go over the details with you. Please give me a call back as soon as possible at 920-276-4349 so we can review your options together. Again, that number is 920-276-4349. I look forward to speaking with you."

29. Hudson could tell that the call was utilized using an artificial and/or a prerecorded voice based on the impersonal nature of the message and the scripted nature of the voicemail.

30. On September 17, 2025, Hudson received a voicemail on her phone from or on behalf of Defendant that utilized an artificial and/or a prerecorded voice.

31. The prerecorded and/or artificial voicemail stated, "Hello. This is Elise Whitman with the reverse mortgage servicing desk. It's the seventeenth of September of 2025 and I'm reachable at 734-472-7417. I'm calling to make sure you're aware of the new reverse mortgage options available on your current reverse mortgage. We

recently mailed you an information packet and I'd like to go over the details with you. Please give me a call back at 734-472-7417 so we can review your options together. Again, that number is 734-472-7417. I look forward to speaking with you."

32. Hudson could tell that the call was utilized using an artificial and/or a prerecorded voice based on the impersonal nature of the message and the scripted nature of the voicemail.

33. Hudson called back the 734-472-7417 phone number to determine who left her a voicemail. A person answered and identified themselves as "Willa" with the "senior benefits center" and said they were calling about a reverse mortgage. "Willa" then provided a direct call back number of 949-535-4446.

34. The phone number 949-535-4446 is registered to Defendant, as reflected on Twilio, a service which, among other things, shows to whom particular phone numbers are registered.

35. On October 3, 2025, Hudson received a call on her phone from or on behalf of Defendant that utilized an artificial and/or a prerecorded voice.

36. The caller stated, "This is Robert Newman in the servicing and transfer department. I'm calling about a possible issue with the setup of your reverse mortgage. It may impact your available funds. It's urgent that we review this with you now. Press 1 now to speak with a licensed reverse mortgage expert."

37. To determine who was calling, Hudson stayed on the line and was then transferred to "Angela" with the "senior benefits center." The caller then said they were calling about a reverse mortgage. "Angela" then said they were located in Orange County in Anaheim, California, and provided a callback number of 949-524-4616.

38. The phone number 949-524-4616 is registered to Defendant, as reflected on Twilio, a service which, among other things, shows to whom particular phone numbers are registered.

39. To better determine who was calling her, Hudson called the phone number 949-524-4616. The person who answered said their name was "George" and that he

was with the "senior benefits center" and that the call Hudson previously received was concerning a reverse mortgage. "George" then said they were located in Orange County in Anaheim, California, and provided a callback number of 714-576-0527.

40. Upon calling back the phone number 714-576-0527, the caller is greeted with a recording. That recording begins by stating, "Thank you for calling Ennkar Incorporated."

41. On October 27, 2025, Hudson received a call on her phone from or on behalf of Defendant that utilized an artificial and/or a prerecorded voice. The call stated, "Hi, this is Jennifer Moore in the reverse mortgage servicing and transfer department. It's important that we take a moment to go over your file as soon as possible. Press 1 now to speak with your assigned reverse mortgage specialist."

42. To determine who was calling, Hudson stayed on the line and was then transferred to "Angela" with the "senior benefits center." The caller then said they were calling about a reverse mortgage. "Angela" then said they were located in Orange County in Anaheim, California, and provided a callback number of 949-524-4616.

43. The phone number 949-524-4616 is registered to Defendant, as reflected on Twilio, a service which, among other things, shows to whom particular phone numbers are registered.

44. Defendant was advised repeatedly for many years prior to the calls at issue to not call Hudson's number, yet it still placed the calls at issue.

45. Hudson seeks recovery individually, and on behalf of the putative class members, for the prerecorded and/or artificial voice calls placed to Hudson and the putative class members and for calls placed to them despite their phone numbers being registered on the DNC List.

## **DIRECT AND VICARIOUS LIABILITY**

46. Without the benefit of discovery, and because Defendant disclosed its identity in the calls at issue, Hudson assumes Defendant directly placed the calls at issue.

47. However, if some or all the calls were placed by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those calls.

48. On May 9, 2013, the FCC determined that telemarketers like Defendant could not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

49. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

50. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

51. If Defendant directly placed the calls at issue to Hudson and the putative class members, Defendant is directly liable for the placing of those calls.

52. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

53. If Defendant did not directly place the calls at issue to Hudson and the putative class members, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

54. Likewise, Defendant also ratified its agents' violations of the TCPA by accepting sales from unlawful telemarketing communications.

55. Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

56. Defendant acted as principals to telemarketing agent(s) who were acting on their behalf.

57. Defendant is not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their captive agents' TCPA violations.

58. For the counts identified below, if Defendant directly placed the calls at issue to Hudson and the putative class members, it is directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

## CLASS ALLEGATIONS

59. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of herself, and all others similarly situated. This action satisfies the requirements of Rule 23.

60. Hudson seeks to represent the following classes:

**Prerecorded Voice Call Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification to whom Defendant (or someone acting on its behalf) placed a prerecorded voice call to said person's phone.

**DNC Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification: (1) received two or more calls during a 12-month period in connection with the marketing of Defendant's products and/or services; (2) whose number was registered on the DNC List for more than 30 days at the time the calls

were received; and, (3) whose phone number is registered to an individual and not a business.

62. The members of the proposed classes are so numerous that joinder of all members is impracticable. Hudson reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed classes are readily identifiable through records available to Defendant or those acting on their behalf.

61. Hudson reserves the right to add administrative subclasses or add classes, and/or to amend the definition of the proposed classes, as this lawsuit proceeds.

63. Most members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

64. On information and belief, Defendant has placed, and likely continues to place, prerecorded voice calls to persons without first obtaining said persons "prior express written consent." It is reasonable to expect that Defendant will continue to place such calls, absent this lawsuit.

65. On information and belief, Defendant has called, and likely continues to call, people whose numbers are on the DNC List. It is reasonable to expect that Defendant will continue to place such calls, absent this lawsuit.

66. Common questions of law and fact exist as to all members of the proposed Class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed Class include, but are not limited to:

   a. Whether Defendant placed prerecorded voice calls to Hudson and the putative class members;

   b. Whether Defendant's conduct of placing prerecorded voice calls violates 47 U.S.C. § 227(b) and/or the TCPA's corresponding regulations;

   c. Whether Defendant's manner and system of obtaining consumers' "prior

express written consent" was legally deficient;

      d.     Whether Defendant's conduct of placing calls phone numbers on the DNC List Defendant violates 47 U.S.C. § 227(c) and/or the TCPA's corresponding regulations;

      e.     Whether the calls were "solicitations," as defined by the TCPA;

      f.     Whether Defendant maintained and effectively implemented sufficient protocols to prevent the placing of calls to persons whose phone numbers are on the DNC List;

      g.     Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and

      h.     Whether Hudson and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

67. Hudson's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed classes and are based on the same legal theories.

68. Hudson and her counsel will fairly and adequately protect the interests of the members of the proposed classes. Hudson's interests do not conflict with the interests of the proposed classes she seeks to represent, and she has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

69. Hudson's counsel will vigorously litigate this case as a class action.

70. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed classes in one action is impracticable, if not impossible, and prosecuting hundreds or thousands of individual actions is not feasible. The size of individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most members of the proposed classes, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed classes had the resources to pursue individual litigation, that

method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

71. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

72. Questions of law and fact, particularly (and not limited to) the propriety of placing prerecorded voice calls to Hudson and the putative class members and the propriety of placing calls to persons on the DNC List, predominate over questions affecting only individual members.

73. Defendant has acted or refused to act on grounds that apply generally to the Classes, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the putative class members.

## COUNT I
## Violations of the TCPA, 47 U.S.C. § 227(b) *et seq.*
**(Prerecorded Voice Call Violations – Individually, and on Behalf of The Putative Class)**

74. Hudson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

75. The TCPA provides, in part that: "It shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

76. The FCC's regulations implementing the TCPA provide that prerecorded voice calls that are placed for solicitation purposes cannot be placed without first obtaining the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

77. The term "prior express written consent" means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using . . . an artificial or prerecorded voice. . . . and the agreement must

identify the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(9).

78. By placing prerecorded voice calls to Hudson and the Prerecorded Voice Call Class members without first obtaining their "prior express written consent" (or any form of consent), Defendant violated the TCPA, 47 U.S.C. § 227(b)(1), and the TCPA's corresponding regulations.

79. The penalty for each call placed in violation of the TCPA's restrictions on placing such prerecorded voice calls is $500 and up to $1,500 per call, if the violation is determined to be willful. *See* 47 U.S.C. § 227(b)(3).

80. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA. *See* 47 U.S.C. §§ 227(b)(3)(A).

81. Defendant and/or those acting on their behalf willfully violated the TCPA when placing prerecorded voice calls to Hudson and the Prerecorded Voice Call Class members' cell phones.

82. Hudson and the Prerecorded Voice Call Class members are entitled to damages of $500 per violation for each prerecorded voice call placed by Defendant and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Kimberly Hudson, individually, and on behalf of all others similarly situated, requests that the Court:

a. Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed Class, appointing Plaintiff as the Prerecorded Voice Call Class representative, and appointing her counsel as class counsel;

b. Enter judgment in favor of Plaintiff and the Prerecorded Voice Call Class members and against Defendant for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of $500 per

violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c. Enter a judgment in favor of Plaintiff and the Prerecorded Voice Call Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d. Enter judgment in favor of Plaintiff and the Prerecorded Voice Call Class for all applicable pre-judgment and post-judgment interest amounts;

e. Enter judgment in favor of Plaintiff and the Prerecorded Voice Call Class for all costs, including the cost of class notice; and

f. Award Plaintiff and the Prerecorded Voice Call Class members such further and other relief the Court deems just and appropriate.

## COUNT II
**Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(c), *et seq.* (National DNC List Violations)**

83. Hudson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

84. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

85. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the DNC List. *See* 47 U.S.C. § 227(c)(5)(A).

86. By placing calls to Hudson's and the DNC Class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c), and the TCPA's corresponding regulations.

87. In addition, the TCPA allows the Court to enjoin Defendant from placing

phone calls to phone numbers that are registered on the DNC List. *See* 47 U.S.C. §§ 227(c)(5)(A).

88. Defendant knew or had reason to know that Hudson's and the putative class members' phone numbers were on the DNC List, but called them anyway.

89. Defendant willfully violated the TCPA by placing calls to Hudson and the DNC Class members despite knowing or having reason to know they did not have consent to call them and knowing their numbers were registered on the DNC List.

90. Hudson and the putative class members are entitled to damages of $500.00 per violation for each call placed by Defendant in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Kimberly Hudson, individually, and on behalf of all others similarly situated, requests that the Court:

g. Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed Class, appointing Plaintiff as the DNC List Class representative, and appointing her counsel as class counsel;

h. Enter judgment in favor of Plaintiff and the DNC List Class members and against Defendant for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

i. Enter a judgment in favor of Plaintiff and the DNC List Class that enjoins Defendant from violating the TCPA's provisions and regulations;

j. Enter judgment in favor of Plaintiff and the DNC List Class for all applicable pre-judgment and post-judgment interest amounts;

k. Enter judgment in favor of Plaintiff and the DNC List Class for all costs, including the cost of class notice; and

l. Award Plaintiff and the DNC List Class members such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff Kimberly Hudson demands a jury trial.

Dated: February 4, 2026

Respectfully submitted,

MILLER SHAH LLP

*/s/James C. Shah*
James C. Shah (SBN 260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN 279834)
Email: kctang@millershah.com
8730 Wilshire Boulevard, Suite 400
Beverly Hills, California 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

BUTSCH ROBERTS & ASSOCIATES LLC

*/s/Christopher E. Roberts*
Christopher E. Roberts (SBN 363586)
Email: CRoberts@butschroberts.com
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Attorneys for Plaintiff*